**SPARKLE LAUNDRY & CLEANERS, INC. and David E. McKinney, Plaintiffs-Appellees,**

v.

**William J. KELTON, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section.

Nov. 30, 1979.

Certiorari Denied by Supreme Court Feb. 19, 1980.

---

John W. Martin, Lebanon, for plaintiffs-appellees.

Kirk C. Waite, Stephenson, Lackey & Waite, Nashville, for defendant-appellant.

## ABRIDGED OPINION

TODD, Judge.

Sparkle Laundry & Cleaners, Inc., and David E. McKinney joined in filing this suit to enforce their separate claims against the defendant, William J. Kelton. Defendant has appealed from a judgment making separate awards to the plaintiffs as follows:

1. The Chancellor rendered judgment of $35,820.87 in favor of Sparkle for principal, interest and attorneys fee upon a note.

2. He approved the foreclosure and sale of the security (a herd of swine), credited the judgment with the proceeds of $14,883.52, less feed bills of $7,554.21, leaving a net credit on the judgment of $7,329.31 reducing it to $28,491.56.

3. Sparkle was awarded a further judgment for $7,227.88 for a note of defendant secured by Sparkle.

4. The Chancellor also granted Sparkle a judgment upon an unsecured debt for cash advanced, feed and bad check in the total amount of $6,929.60.

5. McKinney was awarded judgment for $2,233.00 principal and attorney's fees upon a note.

6. The judgment also provided that defendant should receive credit "against the total indebtedness" for $546.00 representing earnings from fattening cattle and sale of hay.

There is no indication of whether this credit is to apply against the amount due Sparkle or that due McKinney.

Appellant first insists that plaintiffs are barred from any recovery by the doctrine of unclean hands. In *Continental Bankers Life Insurance Co. of South v. Simmons*, Tenn.App.1977, 561 S.W.2d 460, cited by appellant, there was a suit upon a note, but the defendant answered that the entire transaction of which the note was a part was a "sham, conceived in fraud" and that it was not supported by a legal consideration. In the present case, no such allegation of fraud or want of consideration was made in the answer, and no factual grounds for such an allegation are found in the record; hence, the cited authority is not in point. Moreover, no facts are found in this record which would support the application of the doctrine of unclean hands.

Appellant's second insistence is that plaintiffs are not entitled to recover because they breached the contract which formed the consideration for the note and other obligations sued upon.

Defendant was the owner of a farm where he raised swine. In 1974, he borrowed a sum from the National Bank of Murfreesboro, pledging swine as security. In 1975, defendant filed a petition under Chapter XI of the National Bankruptcy Act. While the bankruptcy proceeding was pending, Sparkle purchased the note from the Bank. Under the plan approved by the creditors and the Bankruptcy Court, defendant was permitted to sell some of the swine from time to time under the supervision of one, Arnette, appointed by the Court, proceeds to be paid to creditors, including plaintiffs.

Appellant insists that plaintiffs prevented him from selling swine by falsely representing to him that Arnette had forbidden further sales, and thereby prevented him from paying his debts, including the debts due plaintiffs. This is denied by plaintiffs. The record does not sustain this insistence of appellant. While the bankruptcy plan was in effect, plaintiffs had no authority to control sales of defendant's swine. This authority was vested in Arnette, and any action or inaction of Arnette is not attributable to plaintiffs. In fact, Arnette, in his testimony, denied that he ever forbade defendant to sell swine.

Appellant next insists that plaintiffs in some way breached some agreement by taking the swine from his farm on March 2, 1977. This action was taken after default by appellant in failing to properly care for the swine and to make quarterly payments to plaintiffs as required by the bankruptcy plan. On July 5, 1977, the Bankruptcy Judge entered an order finding appellant guilty of such failures prior to the removal of the swine from appellant's possession and dismissing the bankruptcy proceeding for this reason.

Because of the default in payment of the secured obligation, plaintiffs were authorized by law to seize the security. T.C.A. § 47–9–504.

Moreover, the preponderance of the evidence shows that it was necessary for plaintiffs to take possession of the swine because defendant had abandoned them and ceased to feed them; many were sick; and most were in such a severely debilitated state that they would have soon perished if plaintiffs had not taken them and fed and cared for them.

This Court finds no basis in fact or law to support appellant's second insistence.

By his third insistence, appellant reiterates his theory that his failure to pay plaintiffs is excusable on the ground that plaintiffs rendered him unable to pay by their wrongful conduct. This theory has been previously discussed and rejected.

Under his third insistence, appellant avers that plaintiffs are not entitled to a deficiency because of a wrongful foreclosure. As previously stated, plaintiffs were justified in taking possession of the security by the prior default of appellant and the need to protect the security (swine) from loss. Thus, there was nothing· wrongful about that part of the foreclosure represented by the seizure of the security. As to the disposition of the security after seizure, some discussion is required.

After the swine were seized by plaintiffs on March 2, 1977, defendant obtained a restraining order from the Bankruptcy Court which prevented plaintiffs from selling the swine until September, 1977, when the U.S. Circuit Court of Appeals denied supersedeas in respect to the dismissal of the bankruptcy and termination of the restraining order. Promptly thereafter, plaintiffs sought an order in the present case approving the seizure and authorizing the sale of the swine. Sale was finally authorized by the Chancellor. on April 5, 1978. Sale of the swine was in separate lots on April 24 and 27 and May 19, 23, and 30, 1978.

■ Thus, the delay from seizure to sale is justified by (a) the prohibition by the bankruptcy court and (b) the delay in obtaining permission to sell in the present case.

Moreover, as previously stated, the evidence shows that plaintiffs took possession of the swine for the protection of security because defendant had so neglected the care of the swine that their condition was virtually unsalable. The sale of the swine at an earlier date than April and May, 1978, would have been at a substantial sacrifice because of their debilitated condition.

T.C.A. § 47–9–504 provides in pertinent part:

"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.

.    .    .    .    .

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must· be commercially reasonable."

■ Under the evidence in this record, the retention of the swine for rehabilitation prior to sale was a commercially reasonable "preparation or processing"; and the manner of sale was commercially reasonable within the meaning of the above quoted statute.

The third contention of appellant is found to be without merit.

■ The fourth contention of appellant is that the delay in selling the swine effected an accord and satisfaction barring recovery upon the secured debt. As previously found, the delay in sale was justified by pending litigation and by the debilitated condition of the swine which required a period of rehabilitation. Appellant received substantial benefit from the rehabilitation in the form of increased proceeds of sale

and credit on his debt. He therefore has no grounds for complaint that he was mistreated or suffered loss by the delay.

T.C.A. § 47–9–207(4) provides as follows:

"(4) A secured party may use or operate the collateral for the purpose of preserving the collateral or its value or pursuant to the order of a court of appropriate jurisdiction or, except in the case of consumer goods, in the manner and to the extent provided in the security agreement. [Acts 1963, ch. 81, § 1 (9–207).]"

Also T.C.A. § 47–9–505(2) provides as follows:

"(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor . . .. If the debtor or other person entitled to receive notification objects in writing within thirty (30) days from the receipt of the notification . . . the secured party must dispose of the collateral under § 47–9–504. In the absence of such written objection *the secured party may* retain the collateral in satisfaction of the debtor's obligation. [Acts 1963, ch. 81, § 1 (9–505).]" (Emphasis supplied)

There is no evidence of any proposal to accept the security in settlement of debt under the above statute; and no other statutory provision is found for release of debt by retention of security without sale.

There are authorities for the proposition that *unjustified* retention of collateral *without sale* may be interpreted as an accord and satisfaction; however, in the present case, there *was* a belated sale and the delay in sale was justified.

Appellant's fourth insistence is respectfully rejected.

■ Appellant's fifth insistence is that the Uniform Commercial Code bars recovery because the collateral was not sold "before trial." No statute is cited to support this insistence. Instead, appellant relies upon a treatise written about the U.C.C., as cited in *Bradford v. Lindsey Chevrolet Co.,* 117 Ga.App. 781, 161 S.E.2d 904 (1968). The cited case was a suit against an accommodation surety on a conditional sale of an automobile to a minor. The automobile was wrecked and returned to the plaintiff dealer who retained it without sale fifty (50) days before suing the surety upon the debt and failed to sell it during the sixteen (16) months the suit was pending.

The present suit was filed against the principal debtor and owner of the collateral to obtain approval of the seizure and permission to sell the security and, in addition, to recover judgment upon multiple debts. After finally getting permission of the Trial Court to sell the collateral, plaintiffs sold the collateral promptly.

The same facts distinguish the present case from *National Equipment Rental, Ltd. v. Priority Electronics Corp.,* U.S. Dist. Court, N.Y. 1977, 435 F.Supp. 236, cited by appellant.

Appellant's fifth insistence is respectfully rejected.

· ■ Appellant's sixth insistence is that, because of failure to sell the collateral immediately upon ·seizure, plaintiffs are not entitled to recover "current feed bills for time when they should not have been in possession."

Appellant's proposition of law is correct, but it is inapplicable because of the finding of this Court that the plaintiffs were justified in delaying the sale of the collateral for the reasons previously stated.

Appellant relies upon a statement in the Chancellor's opinion as follows:

". . . The Court is of the opinion that the note was in default and the security subject to being applied thereto. The Court is of the further opinion that the security should have at that time been sold and this matter brought to a head; however, this did not occur and the situation became progressively worse.

· · · · ·

There are *other expenses* incidental to the repossession and housing of the herd

while on the *MicKinney* farm which are disallowed, because the herd should have been sold at the time of repossession.

. . . . .

An Order will be drawn accordingly and the funds on hand, less the current feed bills, will be applied to the satisfaction of the indebtedness." (Emphasis supplied)

The decree of the Chancellor entered on February 20, 1979, reads in part as follows:

"That the Defendant was in default of the terms of the said security instrument and note as amended, and that Plaintiff properly repossessed the security therefor, being the swine herd; and further, that the proceeds from the sale thereof, *less the current feed bills*, should be applied to the satisfaction of the secured note; and further, that *other expenses* incidental to the repossession and housing of the herd on the McKinney farm *should not be allowed* to the Plaintiff, the Court being of the opinion that the herd should have been sold immediately upon repossession by the Plaintiff.

. . . . .

2. That the action of the Plaintiffs in repossessing the swine herd of the Defendant is sustained, and the total proceeds from the sale thereof in the amount of Fourteen Thousand Eight Hundred Eighty-Three and 52/100 Dollars ($14,-883.52), less payment of feed bills in the amount of Seven Thousand Five Hundred Fifty-Four and 21/100 Dollars ($7,554.21) previously approved by the Court, shall be applied to the satisfaction of the secured indebtedness." (Emphasis supplied)

It is true that the Chancellor's opinion and decree indicate that the plaintiffs had the right to sell the collateral promptly after seizure and that subsequent complications would have been avoided if they had done so. However, the Chancellor did not hold that plaintiffs wrongfully delayed the sale, and he allowed "current feed bills" to be deducted from the proceeds of sale before crediting the proceeds to the debt and

granted judgment for the deficiency. The Chancellor thus rejected appellant's insistence that plaintiffs wrongfully delayed the sale and forfeited rights thereby.

Appellant relies upon the oral statement of the Chancellor recorded in the bill of exceptions, but nothing is found on the cited pages of the bill of exceptions to contradict the ultimate conclusion of the Chancellor.

■ .A Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a· part of a written judgment duly entered. *Mass. Mut. Life Ins. Co. v. Taylor Imp. & Veh. Co.*, 138 Tenn. 28, 195 S.W. 762 (1917); *Broadway Motor Co. v. Public Fire Ins. Co.*, 12 Tenn.App. 278 (1930).

Appellant insists that the Chancellor held that expenses of seizure and sale should not be allowed to plaintiffs, but such is not the case. The opinion and decree, quoted above, state that *other* expenses ("incidental to repossession and housing") would be disallowed. The word, "other", is a clear indication that some of said expenses ("current feed bills") were being allowed, indeed, were allowed in the decree to the extent of $7,554.21. See above quoted portion of the decree.

Thus, it is obvious that the Chancellor intended to and did allow the feed bills but disallowed other expenses .of keeping the swine.

This Court cannot· accept appellant's plea that he be relieved of all liability on the debt, or at least relieved of liability for expenses of feeding and fattening his swine so that they and their offspring would bring a better price for payment on his debt.

Appellant insists that the $7,554.21 is an incorrect total of feed bills. He accuses plaintiffs' attorney of "inserting" the $7,554.21 figure in the decree. The record does not disclose who composed the decree, but it bears the signature of counsel for all parties under the words, "Approved for Entry." Whatever the authorship of the decree, it was approved by appellant's counsel.

Appellant cites testimony of David E. McKinney as follows:

"Q. Now, have you also purchased other feed that you haven't paid for?

A. Yes, we have.

Q. I show you a document and ask you if you can identify this?

.      .      .      .      .

A. This is the balance that's owed for feed that has not been paid.

.      .      .      .      .

A. Five thousand, three hundred and forty dollars and twenty-six cents."

The foregoing occurred at a hearing on March 21, 1978; hence the testimony of the witness was limited to expenses before March 21, 1978. However, there is other evidence in the record of expenses after March 21, 1978. Exhibit 3–B bears the following authentication:

"IDENTIFIED AND AUTHENTICAT-ED AS EXHIBIT NO. 3–B   .   .   .

.      .      .      .      .

.   .   .   BEING DESCRIBED AS *IN-VOICE SHEETS MADE IN NAME OF SAM McKINNEY FROM EGAN FEED MILL AND FILED AS EXHIBIT ON JULY 13, 1978.*

Said exhibit contains invoices for feed from March 23, 1978, to May 15, 1978, and amounts to a total of $2,171.75. The feed bills included in the above testimony and exhibit 3–B total $7,512.01.

The bill of exceptions contains no record of testimony at the hearing on July 13, 1978, at which the above Exhibit 3–B was filed. The incomplete bill of exceptions was filed on June 22, 1979, prior to the effective date of the new Rules of Appellate Procedure. There is no record of any effort to abridge the bill of exceptions under the former rules of this Court or the present Rules of Appellate Procedure. Therefore, the incomplete bill of exceptions raises a presumption that the Chancellor heard evidence to support his finding of fact ($7,554.21 feed bill). *Beaty v. Hood*, 43 Tenn.App. 228, 306 S.W.2d 671 (1957).

Appellant's sixth insistence is respectfully rejected.

Appellant's seventh insistence is that the Chancellor's decree must be reversed because it is inconsistent with his opinion. The cause is before this court for review de novo upon the record. T.C.A. § 27–303. Therefore any real or supposed inconsistency between opinion and decree is harmless and immaterial. If, upon de novo review of the facts and law, this Court agrees with the conclusion reached by the Chancellor, the decree should be affirmed irrespective of the reasons given by him. If this Court reaches a contrary decision, a reversal is in order on the same basis. *Hopkins v. Hopkins*, Tenn.1978, 572 S.W.2d 639; *Cherokee Ins. Co. v. U.S. Fire Ins. Co.*, Tenn.App.1977, 559 S.W.2d 337; *Barfield v. Ins. Co. of North America*, 59 Tenn.App. 631, 443 S.W.2d 482 (1968) and authorities cited therein.

Furthermore, if an inconsistency should appear between a written opinion and a *proposed* decree or judgment, it is the duty of counsel to call such discrepancy to the attention of the Chancellor *before* the decree is entered, or, at very least, to refrain from approving the decree by signature which action is a representation that the decree is in proper form.

Appellant nevertheless insists that the decree is unsupported by the evidence in respect to the amount of credit due him in that he should be credited with three checks totaling $3,157.11 given to plaintiffs. Plaintiff, David McKinney, testified that said checks were reimbursement for feed purchased for the swine. The Chancellor accepted the plaintiff's version of this controverted fact, and this Court is not in position to reverse the Chancellor on the credibility of witnesses. *Tennessee Valley Kaolin Corp. v. Perry*, Tenn.App.1974, 526 S.W.2d 488.

The seventh insistence of appellant is respectfully rejected.

Appellant's eighth insistence is:

"The Chancellor should have realized that an agreement between plaintiffs and defendant released defendant from all debts except those listed in the plan."

Appellant insists that he was released from all indebtedness to plaintiffs by the plan adopted in the bankruptcy proceeding heretofore mentioned. It is true that the "Plan" accepted by all creditors provided for release of all debts upon performance of the plan, but the plan, was never performed. The bankruptcy court found defendant to be in default in performance and dismissed the proceeding. Appellant cites no authority, and none is known to this Court, which would release debts of a Chapter XI debtor after dismissal of the proceeding because of the debtor's default.

Appellant also insists that he was released by a certain written instrument cited as exhibit 12, but exhibit 12 is a security agreement and not a release. No such release is found in the record. Plaintiff, David McKinney, testified that defendant had not been released from any debt involved in this suit. The Chancellor accepted plaintiff's version of this disputed fact, and this Court concurs.

The eighth insistence is respectfully rejected.

Ninth, appellant insists that it was improper to render judgment in favor of plaintiffs for a note which plaintiffs guaranteed for defendant, but which note had not yet been paid by plaintiffs.

In response, plaintiffs make the novel argument that one who secures the payment of a note may sue and obtain judgment against the accommodated maker *prior to* payment of the note. This proposition is *not* supported by any of the authorities cited by plaintiffs. It is basically unsound because the right of action upon a note remains in the holder until it is paid by the surety, *after which* the surety may sue for reimbursement. 11 C.J.S. *Bills and Notes* § 750(2), p. 316.

The record does contain an intimation that the note in question may have been paid out of funds belonging to Sparkle, but there is no evidence that this occurred.

On March 22, 1979, after defendant had already appealed to this Court, the Chancellor entered an order containing the following:

That the Court has heretofore rendered judgment in favor of the Plaintiff, David McKinney (sic), against the Defendant, William J. Kelton, for the principal and interest accrued on a certain note payable to the Commerce Union Bank, Lebanon, Tennessee, said note being made by William J. Kelton, and guaranteed by David McKinney (sic) in the principal amount of Five Thousand Three Hundred Seventy-Eight and 75/100 Dollars ($5,378.75), with interest accruing previously at nine percent (9%), and now increased to ten and five-tenths percent (10.5%), said note being due and unpaid. The Court further finds that both the Plaintiff and Defendant admit the existence and validity of the note, that both are liable therefor, and that the sum deposited on savings at The Peoples Bank draws an interest rate of less than half that accruing on the note, and that withdrawal of the savings account and payment of the note will be an obvious benefit to both the Plaintiff and Defendant, and a detriment to neither. The Court further finds that the remainder of the funds on deposit is of an insignificant amount and should be applied as a partial settlement of the judgment heretofore rendered in favor of the Plaintiff."

(The reference to David McKinney is obviously an inadvertence, as the judgment was awarded to Sparkle, and the bank account was proceeds of the sale of the swine and belonged to Sparkle.)

The proceeds of the sale of the security (swine) should have been paid to Sparkle for application on the secured debt. It was error to require that funds belonging to Sparkle be applied to another debt owed by Kelton, thereby discharging Kelton's debt to the bank. Even though Sparkle was surety on the debt, it was not proper to force the surety to pay the debt of Kelton unless and until the holder of the note sued and obtained a judgment against the surety.

The record does not show whether or not the funds were paid to the bank as ordered above. The disposition of this appeal will be based upon the assumption that such did *not* occur. If, however, payment was made as ordered, this would amount to a payment by Sparkle and would entitle Sparkle to sue Kelton hereafter for reimbursement.

Since there is no evidence that this has occurred, this Court will treat the proceeds of the sale as a credit upon the secured debt due Sparkle and reserve the right of Sparkle to seek proper reimbursement in a future suit.

The ninth insistence is sustained, and the decree will be modified accordingly.

The tenth, and last, insistence refers to the note which will be excluded from the judgment of this Court under the preceding (ninth) insistence; hence, it need not be discussed. As insisted by appellant, the net proceeds of the sale of the swine will be credited against the secured note held by Sparkle and not to the unsecured note indorsed by Sparkle and held by the Commerce Union Bank.

The $546.00 credited by the Chancellor against "the total indebtedness" will be credited against the indebtedness of defendant to David E. McKinney, since the credit arose out of an agreement of defendant with this plaintiff.

The judgment of the Chancellor is modified as previously set out and to correct the computation of interest to the date of judgment, February 20, 1979.

A judgment will be entered in this Court in favor of the plaintiffs, Sparkle Laundry and Cleaners, Inc., and against the defendant, William J. Kelton, in the amount of $36,941.17, plus statutory interest from February 20, 1979, to the date of the judgment in this Court.

A judgment will be entered in this Court in favor of the plaintiff, David E. McKinney, and against the defendant, William J. Kelton, in the amount of $1,687.00, plus statutory interest from February 20, 1979.

The suit of Sparkle. Laundry and Cleaners, Inc., against William J. Kelton upon a note dated May 4, 1976, payable to Commerce Union Bank and guaranteed by Sparkle Laundry and Cleaners is dismissed without prejudice to any suit upon said note or for reimbursement of amounts paid to the holder of such note by Sparkle Laundry and Cleaners, Inc., or with funds of said plaintiff.

All costs, including costs of this appeal, are taxed against the defendant, William J. Kelton.

The cause is remanded to the Chancery Court for enforcement of the foregoing judgments and for such other proceedings as may be necessary and proper.

Modified, Affirmed and Remanded.

SHRIVER, P. J., and DROWOTA, J., concur.