# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

|  |  |  |
|---|---|---|
| **LEA ANNE JOHNSON,** | ) | Shelby County Circuit Court |
|  | ) | No. 142054 R.D. |
| Plaintiff/Counter-Defendant/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9408-CV-00183 |
|  | ) |  |
| **BRETT PAUL JOHNSON,** | ) |  |
|  | ) |  |
| Defendant/Counter-Plaintiff/Appellant. | ) |  |
|  | ) |  |

**FILED**

**December 5, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

From the Circuit Court of Shelby County at Memphis.
**Honorable George H. Brown, Jr., Judge**

**David E. Caywood**,
**Marc E. Reisman**,
CAUSEY, CAYWOOD, TAYLOR & McMANUS, Memphis, Tennessee
Attorney for Defendant/Counter-Plaintiff/Appellant.


**Joe M. Duncan**,
BURCH, PORTER & JOHNSON, Memphis, Tennessee
Attorney for Plaintiff/Counter-Defendant/Appellee.

OPINION FILED:

**AFFIRMED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.** : (Concurs)

**McLEMORE, Sp. J.** : (Concurs)

In this divorce action, Brett Paul Johnson (Husband) has appealed the trial court's ruling that Husband was not entitled to rehabilitative alimony and attorney fees from Lea Anne Johnson (Wife).

The parties were married in Chattanooga, in 1984. At the time of their marriage, Wife was in high school and Husband was working as a furniture salesman and was enrolled in his first year of college. The parties had a son in 1985. The added expense of the child forced Husband to obtain a second job with United Parcel Service.

Wife completed her high school education and in 1987 began a pre-pharmacy curriculum at Chattanooga State Technical Community College. The parties agreed sometime prior to Wife's entering college that Husband would work full time to support the family and Wife would go to school. There is a discrepancy concerning the parties' original agreement. Husband alleges that the parties agreed that after Wife completed her education, Husband would go back to college for his education while Wife worked. Wife, on the other hand, avers that there was never a "set plan" regarding Husband's future education.

Wife excelled in her studies at Chattanooga State and received several scholarships and grants which, together with Husband's contributions, helped fund her undergraduate education. In the fall of 1988, the family moved to Memphis so Wife could attend the University of Tennessee College of Pharmacy.

While she attended school, Husband sold furniture. He contributed to the family income by regularly working 55 to 60 hours a week. Additionally, Wife borrowed approximately $25,000 in student loans which, according to her testimony, went toward tuition and living expenses.[1] Wife also worked during her summer vacations and contributed these earnings to their joint account.

The parties began to discuss moving to Colorado immediately after Wife's graduation

---

[1]At the time of trial, approximately $3,000 of Wife's student loan debt had been paid by the parties, leaving a balance of $22,000.

from pharmacy school in June, 1992. Over three consecutive summers, they toured Colorado, looking for a town which suited them both. However, in late 1991, Wife informed Husband of her desire to take part in a clinical residency, which would last for an additional twelve months following graduation. Husband did not originally approve of Wife's plan, but acquiesced when Wife convinced him that her participation in the residency would inure to the family's benefit. He agreed to continue selling furniture during her one year residency. In the summer of 1992, prior to beginning her residency, Wife informed Husband that she was not willing to move to Colorado as there were no acceptable positions as a clinical pharmacist available to her there.

Sometime later in 1992, the marriage began to deteriorate. Wife testified that Husband became violent and suicidal. Finally, in January 1993, Wife moved out of the marital residence. She decided the following month that the marriage was irreconcilable. Wife further testified that in March 1993, she began to have intimate relations with a neurosurgeon, whom she had met during her clinical residency.

Wife filed for divorce in April 1993, two months prior to the conclusion of her residency. Husband filed a counter-complaint, alleging grounds of adultery, inappropriate marital conduct, and irreconcilable differences.

Husband stipulated that Wife should have custody of the minor child. Additionally, the parties were able to reach an agreement regarding Husband's visitation rights and child support liability. Consequently, the only issues before the trial court were the equitable division of the marital estate and Husband's request for alimony and attorney fees.

At the time of trial, Husband was twenty-eight years old and Wife was twenty-six. The child was eight. Wife was a pharmacist at St. Jude Children's Research Hospital in Memphis, earning a base salary of $43,000 per year. Husband was earning approximately $35,000 per year from his job as a furniture salesman. The parties had $15,950 of marital assets and an outstanding debt of $38,000, $22,000 of which was accumulated funding Wife's education.

At trial, Husband testified that he had decided to return to school and become a

dentist. Husband further testified that obtaining a dental license would require two years of academic studies at the University of Memphis followed by four years in dental school. However, he estimated it could take him approximately five years to complete his undergraduate degree since he would have to work part-time to pay his living expenses. At trial, Husband asked that he be awarded rehabilitative alimony to enable him to pursue his educational goals and attain a level of education commensurate with Wife's.

The trial court awarded Husband a divorce on grounds of inappropriate marital conduct. In its equitable division of the marital estate, the court awarded Wife a 1991 Jeep Wrangler, which had an estimated value of $9,000. The unpaid balance on the note was $6,000. The remainder of the marital estate was awarded to Husband. Husband left the marriage with approximately $100 of debt while Wife left with $38,000 in debt.

The trial court ordered Husband to pay Wife $250 per month child support pursuant to the parties' stipulated agreement concerning child support and visitation.[2] However, the trial court ordered that the child support should be abated "beginning with the first month in which [Husband] becomes enrolled in a institution of higher learning and shall continue to be abated until [Husband] completes his college education or the expiration of five years from the date of this Final Decree of Divorce, whichever event first occurs." The court found that Husband was not entitled to alimony, and ordered each party to pay their respective attorney fees.

Husband presents two issues for our review:

> 1. Did the trial court err in refusing to award [Husband] rehabilitative alimony notwithstanding the fact that the court found [Husband] had deferred his education and worked extremely hard for many years supporting the family while [Wife] studied to become a clinical pharmacist?
>
> 2. Did the trial court err in refusing to award [Husband] an attorney fee in this case?

---

[2]The trial court deviated from the amount of child support suggested by the Department of Human Services Child Support Guidelines due to the fact that the child had liberal visitation with Father and spent a significant deal of time in Father's care. In its Final Decree, the trial court states: "This Court has deviated from Child Support Guidelines because of the time the minor child is spending with [Husband]."

Trial courts are entitled to broad discretion in adjudicating the rights of parties in a divorce case. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. App. 1990). Decisions based upon this discretion are entitled to great weight. *Kelly v. Kelly,* 679 S.W.2d 458, 460 (Tenn. App. 1984); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. App. 1973). Findings of fact by the trial court are reviewed *de novo* upon the record with a presumption of correctness, unless the preponderance of the evidence is otherwise. Rule 13(d) T.R.A.P.

We do not believe that the trial court erred when it refused to grant Husband rehabilitative alimony in the instant case. Husband argues that the trial court erred when it refused to award rehabilitative alimony after the court found this to be a proper case for alimony and that Husband had deferred his education so that Wife could pursue hers. To support his argument, Husband relies on the trial judge's oral statement at trial that "legally this is a case for some alimony." However, in its written decree, the court chose not to award any alimony to Husband. It is well established that we do not review the trial court's oral statements, unless incorporated in a decree, but are only to review the court's order and judgments for that is how a court speaks. *Shelby v. Shelby*, 696 S.W.2d 360, 361 (Tenn. App. 1985); *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. App. 1979).

Although the trial court, in its final decree, did not find that this was a case where rehabilitative alimony was due, the court did find that the proof substantiated Husband's entitlement to complete his college education and obtain an undergraduate degree. Consequently, the trial judge ordered that Husband's child support obligations be abated while he pursues his undergraduate degree.[3] Additionally, in order to assist Husband in obtaining his degree, the trial judge awarded the majority of marital assets to Husband and ordered Wife to pay the $22,000 in student loans and the $18,000 in various other debts incurred by the parties during the course of their marriage.

Husband argues that the trial court's ruling is inequitable and urges this Court to

---

[3]Wife has not raised the deviation from the guidelines as an issue on appeal.

instruct the trial court to award rehabilitative alimony to Husband in addition to the abatement of Husband's child support and the court's order that Wife pay virtually all marital debts. T.C.A. § 36-5-101(d), which allows a court to award rehabilitative alimony after making certain considerations, reads as follows:

(d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in Sec. 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to

the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The two most important factors enumerated in T.C.A. § 36-5-101(d) are need and ability to pay. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. App. 1984). Wife made a base pay of $43,000 per year. Husband earned $35,000 per year. Wife also has the opportunity to increase her earnings by working overtime, which she testified is necessary to pay the bills. However, Wife was obligated to pay $38,000 in debt.

The trial court determined that the most practical way to assist Husband in obtaining his education would be to abate Husband's child support payments while Husband pursued his undergraduate degree. On the facts of this case, where parties' earning capacities are not substantially disproportionate and where Wife has the burden of satisfying the entirety of the marital debt, we are not convinced that the trial court abused its discretion when it fashioned such an award. Arguably, the relief given Husband by the trial court, up to 5 years abatement of child support payments, is tantamount to rehabilitative alimony. The result is the same as if Husband were required to pay child support while continuing his education and Wife were required to pay him rehabilitative alimony during the same period. Therefore, we decline to find the trial court in error in failing to award Husband rehabilitative alimony.

As to Husband's second issue, the award of attorney's fees in divorce proceedings is within the discretion of the trial court. *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. App. 1988); *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. App. 1983). Attorney's fees are often taxed to the obligor spouse when the spouse receiving alimony is without sufficient funds to pay for legal representation. *Cranford v. Cranford*, 772 S.W.2d 48, 52 (Tenn. App. 1989). The evidence does not preponderate against the trial court's ruling when there was no proof that Husband was unable to pay the costs of his legal representation. Consequently, we defer to the trial court's ruling.

The judgment of the trial court is affirmed.  Costs of this appeal are taxed to Appellant for which execution may issue if necessary.


_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
McLEMORE, Sp. J. (Concurs)