# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **GLENDA JOAN COLLINS WHISENHUNT** | ) | |
| | ) | |
| Plaintiff/Appellee | ) | Shelby Law No. 141612 |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **GORDON LEE WHISENHUNT,** | ) | Appeal No. 02A01-9506-CV-00126 |
| | ) | |
| Defendant/Appellant. | ) | |

**FILED**

**June 09, 1997**

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

Cecil Crowson, Jr.

**Appellate Court Clerk**

THE HONORABLE JAMES E. SWEARENGEN, JUDGE

For the Plaintiff/Appellee:                    For the Defendant/Appellant:

James D. Causey                                    Robert A. Wampler
Jean E. Markowitz                                  Memphis, Tennessee
Memphis, Tennessee

**AFFIRMED AS MODIFIED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

DAVID R. FARMER, J.

PAUL G. SUMMERS, SP. J.

**OPINION**

This is an appeal from a final divorce decree. Appellant Gordon Lee Whisenhunt ("Husband") challenges, *inter alia*, the amounts awarded to Appellee Glenda Joan Collins Whisenhunt ("Wife") for child support, alimony, marital debts, and attorneys' fees. We affirm as modified.

Husband and Wife were married for twenty years. They have two children together, one of whom reached the age of majority prior to the trial of this case. The remaining child was a minor at the time of the trial, and reached majority in May 1996. Wife was approximately fifty-four years old at the time of the trial and had worked outside the home for only a few weeks during the marriage. She suffers from severe osteoarthritis, which prevents her from obtaining outside employment. During the marriage, she cared for the home, cooked and cleaned, and took care of their children. Husband was approximately fifty-three years old at the time of the trial and has worked for Buckeye Cellulose, formerly Proctor & Gamble Cellulose, for over twenty-two years.

By decree entered on August 4, 1994, the trial court granted a divorce to Wife, citing Husband's inappropriate marital conduct. Based on his 1993 W-2 form, showing an income of $49,480.56, the trial court ordered the Husband to pay $143.53 per week in child support for the remaining minor child, beginning on August 1, 1994. The 1993 W-2 form included overtime income. The trial court awarded Wife $350 per week in rehabilitative alimony, with payments beginning on August 1, 1994 and continuing until Husband reaches the age of sixty-two.

The trial court also awarded the marital home to Wife, making her responsible for the remaining mortgage payments. The court then ordered Husband's retirement account, credit union account, and other accounts to be divided with Wife as marital property. The trial court further ordered that Husband receive the first $10,000 out of these accounts to compensate him for his equity in the house. The joint marital debts and Wife's attorneys' fees and litigation expenses were also to be paid out of these accounts. The court ordered the remaining funds in the accounts split between Husband and Wife equally.

In affidavits filed with the court, Wife listed monthly expenses totaling $2158.96[1] and the marital debts totaling $13,163.87. In addition, the record indicates that Wife's attorneys' fees and litigation expenses totaled $17,865.[2]

Subsequently, the trial court entered a Qualified Domestic Relations Order ("QDRO") to implement its ruling with respect to Husband's profit sharing account with Proctor & Gamble. In the QDRO, the court awarded Husband the first $10,000 in the account and then awarded Wife $43,200, apparently to cover the marital debts as well as her attorneys' fees and litigation expenses. The record reflects that Proctor & Gamble is required to deduct twenty percent of Wife's award for withholding taxes, which would leave her with a net sum of $34,560. The court then split the remaining funds equally. Husband appeals the trial court's decision.

Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

On appeal, Husband argues that the judgment of the trial court, as set forth in the transcript of the proceedings, is ambiguous, unsupported by the evidence, and not accurately reflected in the final decree of divorce and the QDRO entered by the trial court. In addition, he contends that the trial court erred in including his overtime pay as income for determining the amount of child support and alimony payments. Husband also maintains that the alimony award is excessive. The granting of the divorce itself is not an issue in this appeal.

Husband first seeks a review of the oral statements made by the trial court, arguing that they are inconsistent with the written final decree of divorce. However, it is well settled that a court "speaks only through its written judgments." *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. App. 1979). Consequently, the oral statements of the trial court are of no

---

[1] The record indicates that these expenses include some costs relating to the parties' children; however, the majority of these expenses relate solely to Wife.

[2] The record indicates that the attorneys' fees and litigation expenses actually totaled $18,865; however, Wife previously paid $1,000 of the attorneys' fees with a loan. Therefore, $1,000 will be deducted from the total amount of attorneys' fees owed, leaving $17,865 in attorneys' fees, so as to prevent this amount from being counted twice.

effect unless those oral statements are made a part of a written order. *Id.*; *Shelby v. Shelby*, 696 S.W.2d 360, 361 (Tenn. App. 1985). Therefore, we are limited to reviewing the trial court's written orders.

In this case, the trial court ordered Husband's profit sharing plan to be divided with Wife so as to pay off the marital debts, as well as her attorneys' fees and litigation expenses. As noted above, the record indicates that the joint marital debts totaled $13,163.87, while Wife's attorneys' fees and litigation expenses totaled $17,865, resulting in a net sum of $31,028.87. In the QDRO, the trial court awarded Wife $43,200 to pay off these expenses. The source of this figure is unclear. Under the QDRO, after a twenty percent deduction for withholding taxes, Wife would receive a net sum of $34,560. However, the record supports an award to Wife which would net only a sum of $31,028.87.

Consequently, the QDRO shall be modified to result in an award which would net to Wife a total equal to the amount of marital debts, attorneys' fees, and litigation expenses that are supported by the record. The award is hereby reduced to $38,786, which, with a twenty percent withholding tax deduction of $7757, will net Wife a sum of $31,029. The trial court's decision is affirmed as modified on this issue.

Husband next argues that the trial court erred in including his overtime pay as income to determine the amount of child support that he should pay, citing *In re Linebaugh*, No. 03A01-9309-JV-00310, 1994 WL 17074 (Tenn. App. Jan. 24, 1994). In that case, a husband challenged the amount of child support awarded by a trial court. *Id.* at *1. At the time of trial, the husband had been in his new job only a few months. The husband had received two commission payments totaling $900. *Id.* at *2,3. The husband's unrefuted testimony was that the commissions were not on a regular basis or in any definite amounts. *Id.* at *3. Despite this, the trial court averaged the two payments to arrive at a figure of $450 and then ordered the husband to pay support according to the Child Support Guidelines based on his fixed salary plus an additional $450 per month. *Id.* at *3. On appeal, this Court noted that commissions are included in gross income under the guidelines, but only those commissions that are actually received. *Id.* at *3. It held that the trial court erred in assuming that the husband would draw $450 per month in commissions. The judgment was

modified to exclude commissions from the amount used to calculate the monthly child support payments. *Id.* at *3, 5. It was further modified to provide for the payment of child support based on commissions as they were received. *Id.* at 5.

Husband argues that, because he is not guaranteed overtime, overtime income is analogous to commission income. Thus, under *In re Linebaugh*, he argues that his overtime income is speculative and should not be considered in determining the amount of the alimony and child support awards.

Wife contends that overtime pay is properly included as income in determining child support obligations, noting that the legislature recently amended the Child Support Guidelines to specifically include overtime income within the definition of gross income. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a) (1994); *see also Hastings v. Hastings*, No. 01A01-9603-CH-00128, slip op. at 3 (Tenn. App. Nov. 27, 1996). Even before this legislative change, she maintains that case law and the guidelines in effect at the time of trial support her argument that overtime pay should be considered when determining the amount of a child support award.

In *Hopkins v. Hopkins*, No. 02A01-9202-JV-00045, 1993 WL 112523 (Tenn. App. Apr. 13, 1993), the wife appealed the trial court's refusal to include all of the husband's overtime pay in calculating his income under the Child Support Guidelines. *Id.* at *2. In its Opinion, this Court noted that the guidelines in effect at that time defined gross income to include income from any source and did not exclude overtime income. *Id.* The guidelines also provided that child support payments should be based on a percentage of a year's net income. *Id.* The husband regularly received overtime income during the year in question; consequently, the trial court's decision to exclude overtime income from the calculation of child support was reversed. *Id.* at *3.

In this case, the trial court determined Husband's gross income based on the income reflected in his 1993 W-2 form, which included overtime income. Husband admitted that he regularly receives a sixth day of overtime pay for every three weeks of work. Thus, unlike the husband in *In re Linebaugh*, who received only two commission payments during the first few months at his new job and did not receive them on a regular basis or in any definite amounts, the overtime income in this case is not merely speculative.

Under the Child Support Guidelines in effect at the time of trial, the definition of gross income included income from any source and did not exclude overtime income. Tenn. Comp. R.

4

& Regs., ch. 1240-2-4-.03(3)(a) (1989). The guidelines provided that the amount of the child support payments should be based on a flat percentage of the obligor's net income. *Id.* ch. 1240-2-4-.03(5). Thus, the fact that overtime income is not guaranteed is not determinative. Rather, the focus is on income regularly received by the obligor. *See Hopkins* at *3.

Applying the Child Support Guidelines and the principles discussed in *Hopkins* to the facts of this case, the trial court did not err in considering Husband's overtime income. The record in this case includes Husband's 1993 W-2 form, which included overtime income, as well as Husband's admission that he expects to continue to receive such overtime income on a regular basis. Based on this record, the trial court properly included Husband's overtime pay as income in determining the amount of the child support award.

Finally, Husband argues that his overtime income should not be considered in determining an alimony award and that the rehabilitative alimony award is excessive. A trial court has broad discretion in awarding alimony. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. App. 1993). Tennessee statutes specifically provide that the trial court should consider the parties' "relative earning capacity" including income from pensions and "all other sources." Tenn. Code Ann. § 36-5-101(d)(1)(A) (1996); *see also Storey v. Storey*, 835 S.W.2d 593, 596-97 (Tenn. App. 1992) (holding that a husband with an income of $1,600 per month at trial, but whose income ranged from $384,065 to $711,239 in the four years preceding trial, had sufficient earning capacity to make alimony payments of $2,500 per month).

In this case, the record is unclear as to whether the trial court considered the Husband's overtime income in determining the alimony award. However, doing so would not have been error because such income would have been indicative of Husband's earning capacity.

Moreover, applying the statutory factors, the alimony award of $350 per week is not excessive under the circumstances of this case. *See* Tenn. Code Ann. § 36-5-101(d)(1) (1996). Wife was fifty-four years old at the time of trial, unemployed, and suffers from a disease that prevents her from working outside the home. She has many expenses, even after factoring out those expenses relating to raising the parties' children. In addition, the marriage lasted over twenty years, ending only because of Husband's inappropriate marital conduct. Husband has steady employment and the income necessary to sustain the alimony payments, having earned $49,480.56 in 1993. Given Wife's

5

needs, as well as Husband's fault in ending the marriage and his ability to provide support, the alimony award is appropriate.  The trial court is affirmed on this issue.

The decision of the trial court is affirmed as modified.  Costs are taxed to the Appellant, for which execution may issue if necessary.


_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**DAVID R. FARMER, J.**


_____
**PAUL G. SUMMERS, SP. J.**