IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 14, 2022 Session

**ERIKA JEAN SCHANZENBACH v. ALETHEA SKEEN**

**Appeal from the Chancery Court for Sullivan (Bristol) County**
**No. 20-CB-27094     William K. Rogers, Chancellor**
———————————————————

**No. E2020-01196-COA-R3-CV**
———————————————————

This appeal concerns the trial court's denial of a petition for an order of protection based upon allegations of stalking. This is one of four cases in which the petitioner sought an order of protection against four women. We vacate the trial court's determination and remand for sufficient findings of fact and conclusions of law to facilitate appellate review.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, JJ., joined.

W. Andrew Fox, Knoxville, Tennessee, and Martin A. Cannon (pro hac vice) and Michael G. McHale (pro hac vice), Omaha, Nebraska, for the appellant, Erika Jean Schanzenbach.

Devon Chase Muse, Johnson City, Tennessee, and Adam Massey (pro hac vice) and Carrie Sophia Zoubul (pro hac vice), Brooklyn, New York, for the appellee, Alethea Skeen.

**OPINION**

**I. BACKGROUND**

Erika Jean Schanzenbach ("Petitioner") has frequented the Bristol Regional Women's Center ("the Clinic") for approximately seven years as a pro-life advocate, commonly referred to as a sidewalk counselor. She holds signs, attempts to speak with women entering the clinic, and speaks through a "small amplifier" to share her beliefs. Petitioner, who is employed elsewhere, stands outside the Clinic on the roadside following her workday on a weekly basis.

Alethea Skeen ("Alethea[1]"), along with Cheryl Hanzlik, Denise Skeen, and Rowan Skeen (collectively "Respondents"), also frequent the Clinic. Their purported purpose is to counter Petitioner's efforts and offer support for those entering the Clinic.

Petitioner and Respondents had several encounters that led Petitioner to file petitions for orders of protection in the Chancery Court against all four women in January 2020. She alleged, as pertinent to this appeal, that Alethea stalked her by physically and verbally harassing her, blaring sirens in her face, and shadowing her along the sidewalk.

The trial court did not find cause to issue temporary ex parte orders of protection and likewise denied Petitioner's request to consolidate the four cases. Instead, the court consolidated the hearings in the interest of judicial economy but maintained each petition as a separate action. Petitioner filed amended petitions recounting new instances of stalking, requesting orders of protection that would prohibit Respondents from contacting her, coming close to her, causing intentional damage to her property, and interfering with her efforts to assist women at the Clinic.

The consolidated hearing occurred on August 4, 2020, at which time Petitioner submitted lengthy video evidence of her interactions with Respondents for the court's consideration. As to Alethea, Petitioner alleged that Alethea engaged in at least 16 separate acts of stalking between July 2019 and April 2020. She claimed that Alethea frequently crowded her space, pushed a large umbrella in her face, blared music in her face, blew into her face, followed her along the street while stepping on her feet, bumped her chest into her body, issued verbal insults that were, at times, of a sexual nature, and pushed and leaned into her signage. Alethea continued in her behavior, despite Petitioner's requests for her to stop. Alethea also posted to her social media account warnings to Petitioner and described her interactions with Petitioner for those following her social media page.

Respondents did not submit evidence for the court's consideration.

The trial court denied the petition against Alethea, stating that Petitioner failed to establish her allegations of stalking within the meaning of Tennessee Code Annotated section 39-17-315(a)(4).[2] The trial court dismissed the action without prejudice.

---

[1] We will refer to Respondent Alethea by her first name throughout the opinion solely for the purpose of clarity given the involvement of her family members in the other actions.

[2] "'Stalking' means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested[.]"

This timely appeal followed. Petitioner moved to consolidate the four actions on appeal. This court, like the trial court, denied the motion to consolidate but set the individual cases for a consolidated hearing in the interest of judicial economy.

## II. ISSUES

The Petitioner cites a number of issues on appeal that we consolidate as follows:

A.      Whether sufficient evidence was presented to establish Petitioner's allegations of stalking in the form of harassment at the Clinic.

B.      Whether sufficient evidence was presented to establish Petitioner's allegations of stalking in the form of electronic communication.

## III. STANDARD OF REVIEW

The trial court may issue an order of protection if "the petitioner has proven the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence." Tenn. Code Ann. § 36-3-605(b). "Proving an allegation by a preponderance of the evidence requires a litigant to convince the trier-of-fact that the allegation is more likely true than not true." *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 825 n.19 (Tenn. Ct. App. 2005) (citing *Austin v. City of Memphis*, 684 S.W.2d 624, 634-35 (Tenn. Ct. App. 1984)).

We review this non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

To the extent that this case requires that we construe statutes, our review is also de novo. *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 911-12 (Tenn. 2000) ("Issues of statutory construction are questions of law and shall be reviewed de novo without a presumption of correctness."). In construing statutes, we keep the following guidance in mind:

Our resolution of this issue is guided by the familiar rules of statutory construction. Our role is to determine legislative intent and to effectuate legislative purpose. The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute and the entire statutory scheme. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions."

*Dallas v. Shelby Cnty. BOE*, 603 S.W.3d 32, 37 (Tenn. Ct. App. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted)).

## IV. DISCUSSION

### A.

Petitioner claims that the trial court's denial of relief for Alethea's behavior at the Clinic was error when the statute provides that any victim of stalking can obtain relief. Petitioner cites the history of the legislative provisions in support of her claim, noting that the pertinent statutes were expanded beyond the bounds of domestic disputes to include victims of stalking, who may or may not have any prior relationship with the perpetrator.

Orders of protection are statutorily governed by Tennessee Code Annotated section 36-3-601, *et seq*. Prior to 2005, orders of protection were available only to those in domestic relationships, whether related by marriage or otherwise involved in a relationship with the perpetrator. The stated purpose of the statutes was

> to recognize the seriousness of domestic abuse as a crime and to assure that the law provides a victim of domestic abuse with enhanced protection from domestic abuse. A further purpose of this chapter is to recognize that in the past law enforcement agencies have treated domestic abuse crimes differently than crimes resulting in the same harm but occurring between strangers. Thus, the General Assembly intends that the official response to domestic abuse shall stress enforcing the laws to protect the victim and prevent further harm to the victim and the official response shall communicate the attitude that violent behavior is not excused or tolerated.

Tenn. Code Ann. § 36-3-618. In 2005, the General Assembly amended the statutes to also

protect victims of sexual assault and stalking, regardless of the relationship between the victim and perpetrator. 2005 Tennessee Laws Pub. Ch. 381 (S.B. 645). However, the legislative purpose and intent of the statutes remained, despite numerous updates to the statutes and the inclusion of sexual assault and stalking victims. *See generally* Tenn. Code Ann. § 36-3-618 (reflecting no substantive changes since 1995).

Pursuant to Section 36-3-602(a), a stalking victim may seek relief from the courts pursuant to Title 36 when such person "has been subjected to, threatened with, or placed in fear of, domestic abuse, stalking, or sexual assault." "'Stalking victim' means any person, regardless of the relationship with the perpetrator, who has been subjected to, threatened with, or placed in fear of the offense of stalking, as defined in [section] 39-17-315." Tenn. Code Ann. § 36-3-601(11). Section 39-17-315(a)(4) defines stalking as

> a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Similarly,

> "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose[.]

Tenn. Code Ann. 39-17-315(a)(3). Lastly,

> (5) "Unconsented contact" means any contact with another person that is initiated or continued without that person's consent, or in disregard of that person's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:
>
> (A)    Following or appearing within the sight of that person;
>
> (B)    Approaching or confronting that person in a public place or on private property;
>
> (C)    Appearing at that person's workplace or residence;
>
> (D)    Entering onto or remaining on property owned, leased, or occupied by

that person;

(E)     Contacting that person by telephone;

(F)     Sending to that person mail or any electronic communications, including, but not limited to, electronic mail, text messages, or any other type of electronic message sent using the internet, websites, or a social media platform; or

(G)     Placing an object on, or delivering an object to, property owned, leased, or occupied by that person[.]

Citing *PLT v. JBP*, No. 346948, 2019 WL 7206134 (Mich. Ct. App. Dec. 26, 2019), Petitioner claims that she was entitled to an order of protection under the circumstances presented here. In *PLT*, the appellate court in Michigan upheld a trial court's grant of an order of protection against a pro-life advocate for his behavior toward an abortion clinic's employee. 2019 WL 7206134, at *7. The respondent argued that his protests were constitutionally protected conduct serving a legitimate purpose, which cannot constitute harassment within the meaning of the Michigan statutes. *Id.* at *3. In determining whether to uphold the order, the court in *PLT* noted that an individual's right to free speech must be considered alongside the right for others "to be let alone." *Id.* at *3-4 (citing *Hill v. Colorado*, 530 U.S. 703, 716-17 (2000)). Acknowledging that while "[p]ublic protests regarding abortion, whether in support or opposition, serve legitimate political purposes," the court held that respondent's actions "exceeded the permissible scope of the activity" and violated the petitioner's right to be let alone. *Id.* at *4. The court noted that the respondent went beyond his political message and targeted the petitioner, directing his comments toward her when other workers were present. *Id.* The court continued,

Respondent's conduct violated petitioner's right to be let alone. Petitioner repeatedly told respondent that he was scaring her and to get away from her. Respondent ignored these requests. Accordingly, respondent was aware that his conduct was having a negative impact on petitioner. Despite this knowledge, respondent continued to approach petitioner. Consequently, the trial court could reasonably find, as it did, that respondent was no longer simply seeking to share his political viewpoint with someone who might be receptive to his beliefs. Instead, respondent was antagonizing an individual who knew his views, did not share them, did not wish to hear them, and had repeatedly asked him to stop because he was scaring her. Such conduct was no longer constitutionally protected because respondent violated petitioner's right to be let alone when he repeatedly attempted to press his ideas on an unwilling participant. Respondent's conduct no longer served a legitimate purpose because it exceeded the scope of his general anti-abortion protest, having moved from advocacy to threatening conduct. Accordingly,

- 6 -

respondent's behavior instead became that of an individual continually accosting someone who repeatedly asked him to stop and told him that he was scaring her. Thus, because respondent's conduct did not serve a legitimate purpose, it was not constitutionally protected.

*Id.*

Here, Petitioner argues that the reverse scenario was present in this case, namely Alethea's conduct moved from legitimate advocacy protected by her right to free speech to threatening conduct, despite Petitioner's repeated requests to leave her alone. Alethea responds that the court's opinion in *PLT* is neither binding nor applicable. She distinguishes her behavior by claiming that she complied with Petitioner's request not to touch and that she and Petitioner engaged in conversation, namely she told Petitioner to go home, albeit in colorful language, while Petitioner accused her of supporting a place of murder and bloodshed.

In its oral pronouncement from the bench, the court explained that it did not believe that an order of protection was the proper recourse for the Petitioner. The court further stated that Petitioner failed to establish the requisite mental distress necessary to sustain the petition. However, the order entered by the trial court was a general form order typically entered in domestic violence actions. The order does not contain specific findings of fact and conclusions of law in support of the trial court's decision. While the court's pronouncement from the bench contained some of the court's reasoning, such reasoning may not be considered when the oral ruling was not incorporated into the final order. *See generally Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979) ("A Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered."). Tennessee Rule of Civil Procedure 52.01 requires that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." When a trial court does not explain the basis of its ruling, we are hampered in performing our reviewing function, and we may remand the case with instructions to make requisite findings of fact and conclusions of law and enter judgment accordingly. *See In re Noah J.*, 2015 WL 1332665 at *5–6 (Tenn. Ct. App. Mar. 23, 2015). Given the attempted application of the domestic violence statutes in a factual scenario that is unique, we vacate the ruling and remand this matter to the trial court to issue sufficient findings of fact and conclusions of law to facilitate our review.

B.

Petitioner next asserts that the trial court further failed to consider Alethea's social media posts as stalking.  Again, the trial court dismissed these counts of stalking by a general form order.  We remand for entry of findings of fact and conclusions of law to facilitate our review.

## V.  CONCLUSION

For the reasons stated above, we vacate the decision of the trial court.  The case is remanded for further proceedings consistent with this opinion.  Costs of the appeal are taxed equally to the parties, Erika Jean Schanzenbach and Alethea Skeen.

_____
JOHN W. MCCLARTY, JUDGE