IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 14, 2015 Session

**RICHARD LEE HIBBENS v. ASHLEY ELIZABETH RUE**

**Direct Appeal from the Chancery Court for Bradley County**
**No. 2010-CV-174      Jerri Bryant, Chancellor**

_____

**No. E2014-00829-COA-R3-CV-FILED-JUNE 12, 2015**

_____

This appeal involves an award of retroactive child support. The child's father is in the military and was deployed overseas during part of the relevant time period. The trial court initially set the child support obligation based on the number of days the father would have had with the child pursuant to the parties' mediated agreement, regardless of the fact that he did not exercise all of that time due to his deployment. After considering a post-trial motion filed by the mother, the trial court altered the award to set the child support obligation based on the number of days the father actually spent with the child, not the number of days he was provided under the mediated agreement. The father appeals, challenging substantive and procedural aspects of the court's decision. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., and THOMAS R. FRIERSON, II, J., joined.

Randy Sellers, Cleveland, Tennessee, for the appellant, Richard Lee Hibbens.

Philip M. Jacobs, Cleveland, Tennessee, for the appellee, Ashley Elizabeth Rue.

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

The child at issue in this case, Logan, was born in February 2010. His parents were unmarried and filed a joint petition to establish parentage in May 2010 in the chancery court of Bradley County. On May 27, 2010, the chancery court entered an order establishing parentage and approving a permanent parenting plan submitted by the

parties. The order designated the child's mother, Ashley Rue ("Mother"), as the primary residential parent. It provided that the child's father, Richard Hibbens ("Father"), would be the alternate residential parent and pay child support in the sum of $300 per month. This amount was calculated based on Mother having 250 days of parenting time with the child and Father having 115 days. Father was serving in the United States Marine Corps at the time, but apparently he and Mother both resided in Cleveland, Tennessee.

The parties and their attorneys attended mediation on November 9, 2011, and they reached an agreement as to various issues. On January 27, 2012, the chancery court entered an order approving and incorporating the parties' mediated agreement. The mediated agreement addressed parenting time and other matters and contained the following paragraph addressing child support:

> **Child Support:** To be modified by attorneys according to state guidelines. W-2 forms were exchanged in mediation and the parties have agreed to exchange year to date records.

Despite this provision, the child support obligation was not immediately modified.

Approximately one year after the parties' mediated agreement, on November 30, 2012, Father filed an application for emergency relief in the chancery court. According to the petition, the parties were still operating under the January 27, 2012 order incorporating the mediated agreement. However, since that time, Father had been deployed to Afghanistan and was not expected to return to the United States until May 2013. Father's petition was limited to issues regarding his long-distance communication with two-year-old Logan and visitation between Logan and Father's family during the upcoming holidays. The parties entered an agreed order resolving these issues on December 18, 2012. The agreed order provided that when Father returned to the United States, the court's previous order would remain in effect.

On April 23, 2013, apparently in anticipation of Father's return, Mother filed a petition seeking an order retroactively setting child support pursuant to the November 9, 2011 mediation agreement incorporated into the January 27, 2012 order. Basically, Mother asked the court to set child support in accordance with the child support guidelines retroactive to November 9, 2011. Mother also asked the court to order the parties to attend mediation and to enter a permanent parenting plan based on the parties' current circumstances.

Two days later, Father filed an application for emergency relief or for a prompt hearing, acknowledging that the parties were still operating under the January 27, 2012 order incorporating the mediated agreement. He asked the court to instruct the parties as

to "how to proceed" on parenting time pending further mediation. After an unsuccessful attempt at mediation, the trial court entered an order on parenting time but reserved all other issues for the final hearing.

The remaining matters were tried on August 26, 2013. At the end of the hearing, the trial judge announced her ruling from the bench. However, the record before us does not contain a statement of the evidence or a transcript from the hearing or the bench ruling. Prior to the entry of any written order, on October 15, 2013, Mother filed three motions. She filed a "Motion to Enter Judgment," asking the court to enter an order containing findings of fact and conclusions of law and adopting a parenting plan. According to this motion, the parties' attorneys could not agree on the content of an order accurately reflecting the court's oral ruling. Mother asked the trial court to adopt the order and parenting plan prepared by her counsel. Mother also filed a "Motion to Alter or Amend," asking the trial court to modify its ruling regarding a parenting plan provision relating to childcare. Finally, Mother filed a "Motion" asking the trial court to alter its prospective child support ruling, either by finding Father voluntarily underemployed for leaving the military or by exercising its discretion to deviate from the child support guidelines, which, apparently, required Mother to pay child support to Father based on their current circumstances.

Father filed responses to each of Mother's three motions. As relevant to this appeal, he contended that the proposed order prepared by his attorney most accurately reflected the court's oral ruling regarding retroactive child support. According to Father, the trial judge ruled that Father had demonstrated logical and legitimate reasons as to why he was unable to exercise his parenting time. Therefore, according to Father, the judge decided to use the "actual day count" to calculate retroactive child support. Father interpreted this language to mean that the court intended to use "the actual day count *agreed to by the parties*, not the actual days that he was able to visit." (Emphasis added.) Father suggested that his interpretation was reasonable considering the court's finding regarding the legitimacy of Father's reason for not visiting. Accordingly, Father explained that the proposed order submitted by his attorney used "the actual day count agreed to by the parties" when calculating retroactive child support.

Because of the attorneys' inability to agree on an order, the trial court requested their appearance at an additional hearing on November 8, 2013. The record does not contain a transcript or a statement of the evidence from this hearing. On December 26, 2013, the trial court entered a written order and permanent parenting plan. Regarding retroactive child support, the order provided:

> The Respondent, Richard Lee Hibbens (hereinafter referred to as "Father"), has given logical reasons why he could not co-parent every bit of time

3

scheduled by the parties in their mediated agreement. The Court will use actual income to set child support retroactively, and the Court will use actual day count from the mediated agreement in order to calculate retroactive child support from December 2011. . . . Father's day count pursuant to Mother's exhibit for actual days agreed to by the parties from the mediated agreement for 2012 is 118, and for 2013 Father's actual day count prorated through the end of September, 2013 is 103. Father's day count after October 1, 2013 is set at 182.5 pursuant to today's ruling[.][1]

Based on the number of days Father was provided under the mediated agreement, the trial court awarded Mother retroactive child support in the amount of $3,935 for the period of December 1, 2011 to September 30, 2013.

Within thirty days of the entry of this order, on January 24, 2014, Mother filed a "Motion to Clarify," seeking an order "clarif[ying] or alter[ing]" the trial court's ruling in several respects. Regarding the award of retroactive child support, Mother claimed that the trial judge ruled at trial that Father would *not* be given credit for the days when he did not actually exercise parenting time for the purpose of calculating child support. According to Mother, after the trial, the judge "change[d] the finding previously stated and allowed the Father credit for all days that were contemplated he might exercise." Mother claimed that the trial court's ruling contradicted the child support guidelines and recent case law on the issue. Thus, Mother argued that the trial court's initial oral ruling was correct, and the court should consider the actual days that Father exercised and not the days he was given in the parenting plan.

Father filed a response, asserting, among other things, that Mother had impermissibly filed successive or serial post-trial motions in a manner that was not authorized by the Rules of Civil Procedure. He claimed that the issue pertaining to counting Father's days was "the crux of the disagreement between the parties" when they submitted proposed orders after the original hearing, and therefore, the trial court's December 26, 2013 written order was "final" as to that issue.

On March 28, 2014, the trial court entered a written order granting in part Mother's "Motion to Clarify." The trial court found that its previous order "did not answer the issue on the deviation of child support requested by Mother." The trial court held that "[f]or the period of time between the parties' mediation agreement until August, 2013, the calculation of child support will be based upon the actual number of days that the Father visited." Although the order did not specify the increase in Father's retroactive child support obligation based on this change in the calculation, Father states

---

[1]Prospectively, the trial court awarded the parties equal parenting time at 182.5 days per year and ordered Mother to pay $99 per month in child support.

in his brief on appeal that it resulted in his owing $9,752 in retroactive child support rather than $3,935. Father timely filed a notice of appeal.

## II. ISSUES PRESENTED

Father presents the following issues, which we have slightly restated, for review on appeal:

1.      Did the trial court err in considering and ruling on Mother's motion to clarify the December 26, 2013 order, when this order encompassed a ruling on Mother's previously filed motion to alter or amend;

2.      Did the trial court err in calculating Father's retroactive child support obligation based on the actual number of days he visited with the child when it was impossible for him to visit due to his military service and deployment overseas.

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion to alter or amend for abuse of discretion. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). We also review a child support decision for abuse of discretion; however, "decisions regarding child support must be made within the strictures of the Child Support Guidelines." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (citing *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004)). The trial court's discretionary decisions must take the applicable law and the relevant facts into account. *Id.* (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). "Accordingly, a trial court will be found to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* (citing *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

## IV.  DISCUSSION

### A.  *Successive Motions to Alter or Amend*

We begin with Father's argument regarding the procedural posture of Mother's motions and the trial court's ruling.  A short review of the chronology is helpful.  The trial of this matter was held on August 26, 2013.  On October 15, 2013, prior to the entry of any written order, Mother filed three separate motions – a motion for entry of judgment, a motion to alter or amend the court's ruling on childcare, and a motion for alteration of the prospective child support award.  In his response to these motions, Father pointed out that the parties were unable to agree on an order because of their disagreement as to the number of days to be credited to Father.  After another hearing, the trial court entered a written order on December 26, 2013, calculating retroactive child support based on the "actual days agreed to by the parties from the mediated agreement." Mother then filed a "motion to clarify," which was, in substance, a motion to alter or amend,[2] asking the court to alter its ruling regarding the number of days to be used in the calculation.  The trial court granted this motion in part and altered its decision in Mother's favor.  Father argues that Mother impermissibly filed serial or successive motions to alter or amend.  He suggests that if Mother was dissatisfied with the December 26, 2013 order, her only remedy was to file a notice of appeal to this Court. We respectfully disagree.

Rule 59.01 of the Tennessee Rules of Civil Procedure provides that there are only four motions contemplated by the Rules that will extend the time for filing a notice of appeal:

> (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under Rule 59.04 to alter or amend the judgment.

*See also* Tenn. R. App. P. 4(b) (listing these same four motions and providing that the time for appeal runs from the entry of the order denying a new trial or granting or

---

[2]"[W]hen determining whether a post-trial motion is one of those designated by the rules of civil and appellate procedure as tolling commencement of the time for filing a notice of appeal, courts must consider the substance of the motion, rather than its form." *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998) (considering a motion entitled "motion to reconsider" as a motion to alter or amend).  Mother's motion asked the trial court to enter "an Order which clarifies or alters the judgment."  We construe this as a motion to alter or amend.

denying any other such motion). The Rule also provides that "[m]otions to reconsider any of these motions are not authorized and will not operate to extend the time for appellate proceedings." Tenn. R. Civ. P. 59.01.

However, the motions filed by Mother in this case were not truly successive Rule 59 motions. The first three motions were filed and heard prior to the entry of any written order. A trial court "speaks through its order." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001). A judgment must be reduced to writing in order to be valid, and an oral ruling may be modified or reversed in the meantime. *Irvin v. Irvin*, No. M2010-01962-COA-R3-CV, 2011 WL 2436507, at *8 (Tenn. Ct. App. June 15, 2011); *Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, at *5 (Tenn. Ct. App. June 25, 2008). "'[N]o oral pronouncement is of any effect unless and until made a part of a written judgment duly entered.'" *Saweres v. Royal Net Auto Sale, Inc.*, No. M2010-01807-COA-R3-CV, 2011 WL 3370350, at *2 (Tenn. Ct. App. Aug. 1, 2011) (quoting *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979)).

Pursuant to Tennessee Rule of Civil Procedure 54.02,

> any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Tenn. R. Civ. P. 54.02. Accordingly, "motions seeking relief from a trial court's decision adjudicating fewer than all the claims, rights, and liabilities of all the parties, should be filed pursuant to Rule 54.02." *Discover Bank v. Morgan*, 363 S.W.3d 479, 488 (Tenn. 2012). In contrast, "Rule 59 motions relate to final judgments -- judgments adjudicating all the claims, rights, and liabilities of all the parties." *Id.* at 489.

Mother's first motion -- for entry of a written order – clearly does not preclude her from filing a motion to alter or amend after the entry of such an order. As for the other two motions, even though one was entitled "Motion to Alter or Amend" and the other "Motion" likewise sought alteration of the trial court's oral ruling, we construe these as motions to revise a non-final decision pursuant to Rule 54.02. *Johnson v. Tanner-Peck, L.L.C.*, No. W2009-02454-COA-R3-CV, 2011 WL 1330777, at *16 n.6 (Tenn. Ct. App. Apr. 8, 2011) (explaining that this Court treated a motion to alter or amend as a motion to revise under Rule 54.02 because the order sought to be amended was not a final order);

*Howell v. Baptist Hosp.*, No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *8 n.9 (Tenn. Ct. App. Jan. 14, 2003) (noting that the trial court properly considered a "Motion to Alter or Amend" filed pursuant to Rule 59.04 as a motion to revise a non-final judgment under Rule 54.02 because the order was not final when the motion was filed); *see also Weaver v. McCarter*, No. W2004-02803-COA-R3-CV, 2006 WL 1529506, at *7 (Tenn. Ct. App. June 6, 2006) (treating a "motion to reconsider" a non-final decision as a motion to revise under Rule 54.02). Thus, Mother's pre-judgment motions were not Rule 59 post-trial motions.

Furthermore, even the rule against successive post-trial motions does not prohibit a party from filing a second motion to alter or amend in response to an order that is amended in a manner adverse to that party. *See Graybeal v. Sherrod*, No. E2011-01825-COA-R3-CV, 2012 WL 4459807, at *10 (Tenn. Ct. App. Sept. 27, 2012) (explaining that a judgment altered in a manner adverse to the party would have "the effect of starting the time anew for filing a timely motion pursuant to Tenn. R. Civ. P. 59"); *see also Legens v. Lecornu*, No. W2013-01800-COA-R3-CV, 2014 WL 2922358, at *13 (Tenn. Ct. App. June 26, 2014) (*no perm. app. filed*) (holding that a party could file a second Rule 59 motion in response to an amended judgment because the second motion addressed the amended decision and was not simply a motion to "reconsider" previously asserted grounds).

In the case before us, the December 26, 2013 order was the first written order containing a ruling adverse to Mother's position. Mother filed a single post-trial Rule 59 motion to seek alteration of the trial court's written order. The Rule 59 motion addressed the number of days to be credited to Father in the child support calculation – an issue that was not specifically addressed in any of her three pre-judgment motions. Accordingly, we find no reversible procedural error in the trial court's decision to consider Mother's motion.

### B. Counting Days

Father also argues that the trial court erred in altering its initial decision and counting the days that he actually spent with Logan rather than the days he was allotted under the mediated agreement. The Eastern Section of this Court considered a similar dilemma in *Ramsey v. Ramsey*, No. E2012-01940-COA-R3CV, 2013 WL 5827648 (Tenn. Ct. App. Oct. 29, 2013) (*no perm. app. filed*). In that case, the issue was the amount of child support owed by a father during the pendency of a divorce proceeding. The child support worksheets submitted by the father and adopted by the trial court were based on his exercise of 80 days of parenting time with his daughter annually. *Id.* at *9. However, in reality, he only exercised one day of parenting time with the child during the divorce proceedings, which spanned from September 2008 to August 2012. *Id.* Based on

this discrepancy, the court of appeals concluded that the trial court's calculation of child support was "flawed." *Id.* The court explained:

> As relevant to this issue, the Child Support Guidelines state that the worksheets should reflect "the number of days each child spends with each parent and/or non-parent caretaker." Tenn. Comp. R. & Regs., ch. 1240-02-04-.08(2)(a)(1). The Guidelines further state:
>
>> For purposes of this chapter, **a "day" of parenting time occurs when the child spends** more than twelve (12) consecutive hours in a twenty-four (24) hour period **under the care, control or direct supervision** of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.
>
> Tenn. Comp. R. & Regs. 1240-02-04-.02(10) (emphasis added). Based on this language, it is clear the Guidelines contemplate that the number of "days" spent with each parent, as reflected on the worksheets, will be the actual number of days spent in the care of each parent, as opposed to the number of days established under the permanent parenting plan.
>
> Our case law regarding calculation of child support recognizes this requirement. See *Milam v. Milam*, No. M2011-00715-COA-R3-CV, 2012 WL 1799029 at *6 (Tenn. Ct. App. May 17, 2012) (reversing the trial court's calculation of child support because the evidence preponderated against the trial court's finding that Father exercised 162.5 days of parenting time with the children); *Devore v. Devore*, No. E2010-02017-COA-R3-CV, 2012 WL 11266 at *5 (Tenn. Ct. App. Jan. 4, 2012) ("the court should have considered . . . Husband's actual time spent with Daughter."); *Grisham v. Grisham*, No. W2010-00618-COA-R3-CV, 2011 WL 607377 at *8 (Tenn. Ct. App. Feb. 22, 2011) (reversing the trial court's calculation of child support because the actual time the father spent with the child was not reflected on the worksheet); *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777 at *5 (Tenn. Ct. App. July 31, 2008) ("Pursuant to the regulations, each parent enters into the Worksheet the number of days the child will spend with each parent.").
>
> We conclude that the trial court erred in failing to consider the actual number of co-parenting days Husband spent with [his daughter] when it

approved Husband's calculation of child support. Upon remand, the trial court is instructed to enter the actual number of annual days of co-parenting time exercised by Husband, rather than the number of days allowed under the permanent parenting plan, when recalculating the child support award for the period of September 2008 through April 2010.

*Id. See also Allen v. Allen*, No. M2013-00271-COA-R3-CV, 2014 WL 1713231, at *5 (Tenn. Ct. App. Apr. 28, 2014) (*no perm. app. filed*) ("Child support shall be calculated based upon the actual number of annual days Mother and Father exercise parenting time—365 days for Mother and zero days for Father—rather than the number of days contemplated in the permanent parenting plan."); *Ghorashi-Bajestani v. Bajestani,* No. E2013-00161-COA-R3-CV, 2013 WL 5406859, at *9 (Tenn. Ct. App. Sept. 24, 2013) *perm. app. denied* (Tenn. Mar. 5, 2014) (remanding for the trial court to calculate child support based on "the actual number of annual days of co-parenting time exercised by Husband, rather than the number of days allowed under the permanent parenting plan"). We likewise conclude that Father's child support obligation should be based on the number of days he actually exercised his parenting time with Logan rather than the number of days he was allocated in the mediated agreement.

On appeal, Father seems to argue that this Court should craft some type of exception due to his military service and the fact that it was "impossible" for him to exercise his parenting time. He claims that his situation is "factually inconsistent" with *Ramsey* because of his "unique circumstances" regarding his deployment. He cites no authority for such an exception, and we are not aware of any. As noted above, "decisions regarding child support must be made within the strictures of the Child Support Guidelines." *Richardson,* 189 S.W.3d at 725. We certainly appreciate and commend Father's service to our country; however, the fact remains that he is obligated to financially support his child, even when he is serving overseas. Mother was required to provide care for the child in Father's absence, and it is not inequitable to consider the number of days that Father was unable to provide such care when calculating child support.

Finally, Father vaguely asserts that the trial court erred in retroactively modifying the child support obligation to the date of mediation in November 2011. He says, "It is interesting to note that in the case at bar, the actual petition to modify the parenting plan was not filed by [Mother] until April 23, 2013." We find nothing in the record to indicate that Father raised this argument in the trial court. In any event, however, the trial court did not err in the effective date of its retroactive child support calculation. Mother's April 23, 2013 petition sought an order retroactively setting child support pursuant to the November 9, 2011 mediation agreement incorporated into the January 27, 2012 order. She essentially asked the court to set child support in accordance with the child support guidelines retroactive to November 9, 2011. However, this request was simply an

attempt to carry out the terms of the parties' November 9, 2011 mediation agreement, in which the parties agreed that child support would be modified "according to state guidelines," as the parties exchanged W-2 forms during mediation and agreed to exchange year to date records. This issue is without merit.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Richard Lee Hibbens, and his surety, for which execution may issue, if necessary.

_____
BRANDON O. GIBSON, JUDGE

11