IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 26, 2016 Session

IN RE ADDISON E., ET AL.[1]

Appeal from the Juvenile Court for Knox County
No. 115116      Timothy E. Irwin, Judge

No. E2015-00721-COA-R3-PT-FILED-JUNE 30, 2016

This appeal involves the termination of a mother's parental rights to two minor children. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of her rights on the statutory ground of severe child abuse. The court further found that termination was in the best interest of the children. The mother appeals. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, CHIEF JUDGE, and THOMAS R. FRIERSON, II, J., joined.

Anne Greer, Knoxville, Tennessee, for the appellant, Crystal P.

Jennifer S. Bjornstad, Knoxville, Tennessee, for the appellee, Charlotte R. T.

OPINION

I.      BACKGROUND

Addison E. and Austin E. (collectively "the Children") were born out-of-wedlock to Crystal P. ("Mother") and Thorton E. ("Father") in November 2007 and October 2009, respectively. Father is listed on each child's birth certificate. Mother and Father (collectively "the Parents") battled substance abuse issues for a number of years while caring for the Children.

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

The Tennessee Department of Children's Services ("DCS") removed the Children from Mother's care on March 3, 2010, based upon allegations of unstable housing, substance abuse issues, and lack of income. The Children were later adjudicated as dependent and neglected by agreed order, entered on May 26, 2010. The maternal grandparents, Penny and Richard T., accepted legal and physical custody of the Children at that time, thereby relieving DCS of custody. In August 2010, the court provided the maternal grandparents with the discretion to allow the Parents to engage in unsupervised visitation with the Children. The court also advised each parent that he or she could regain custody of the Children by demonstrating six months of continued sobriety, cooperation with substance abuse treatment, employment, stable housing, and consistent and appropriate visitation.

Mother was later charged with numerous crimes and placed on probation in 2012. The record does not reflect whether Mother's visitation with the Children was affected by her criminal activity. However, on June 5, 2013, she was arrested for driving under the influence ("DUI") while the Children were in the car. The next day, the paternal grandmother, Charlotte T. ("Grandmother"), petitioned for and was awarded temporary custody of the Children.[2] Mother was later charged with violating her probation, failure to appear, and evading arrest. She was incarcerated in Blount County from March 2014, through July 2014, when she was released to a half-way house and placed on probation.

On August 26, 2014, the court considered a petition filed by DCS in which DCS requested a finding of severe child abuse. Citing Tennessee Code Annotated section 37-1-102(b)(21)(A)(i),[3] the court found by clear and convincing evidence that the Children had been severely abused by Mother as evidenced by her driving while under the influence with the Children in the car.

On November 6, 2014, Grandmother sought termination of Mother's parental rights to the Children. She alleged that termination was supported by the statutory grounds of the persistence of conditions which led to removal and a prior finding of severe child abuse as evidenced by the court's order, entered on March 24, 2015.[4]

---

[2] The court later awarded Grandmother full legal custody of the Children but also advised her to accommodate Mother's right to supervised visitation.

[3] "The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death."

[4] Grandmother also indicated an intention to file a petition to terminate Father's parental rights in the event that he did not voluntarily surrender his rights. His rights are not at issue in this appeal.

The hearing on the termination petition was held on April 1, 2015. Mother testified that she was on probation for convictions of theft and evading arrest when she was arrested for driving under the influence in June 2013. She served three months in jail before her release in July 2014. She stated that she was arrested again in November 2014 for consuming alcohol while residing in a half-way house under the supervision of the drug court program. She served approximately three weeks in jail before her release.

She acknowledged her extensive history of substance abuse and claimed that she is currently in treatment to address her addiction. She agreed that she had completed two outpatient programs with little success but stated that she was compliant with the current program. She provided that the current program required her to comply with the rules and requirements of the drug court program, submit to drug screens on a twice weekly basis, abide by a curfew, and maintain employment. She provided that she has not failed a drug screen and that she has also maintained employment. She completed the first two phases of the program and was released from the half-way house approximately two months ago. She stated that she lives in an apartment in Alcoa with a roommate.

Relative to the allegation of severe abuse, the following colloquy occurred:

Q. Back in June of 2013, [Grandmother] filed a petition for custody based upon you being arrested and being charged with DUI; is that correct?

A. Yes.

Q. We had a hearing on that in August of 2014 and you took the Fifth to all of the questions that were asked of you; is that correct?

A. Yes.

* * *

Q. Was it disposed of on [December 9, 2014], that charge, of you driving under the influence with the children in the car with you?

A. Was it what now?

Q. Disposed of at court. Did you make a plea?

A. Yes.

Q. What did you plead?

- 3 -

A.      I pleaded guilty, I guess.

Q.      You pled guilty to DUI with the [C]hildren in the car with you; is that correct?

A.      Yes.

Q.      And that was the basis of the severe abuse finding against you in Juvenile Court; is that correct?

A.      Yes.

* * *

Q.      You pled to the DUI, and it was not alcohol that you had in your system, is that correct, it was substances that you didn't have prescriptions for?[5]

* * *

Q.      With regard to the charges that you had, it was substances, pills and different things, that you had taken that you were being charged with; is that correct, not alcohol?

A.      Right.

Q.      Did you have prescriptions for any of those things?

A.      No.

Mother later testified,

I was clean up until pretty much right before I got my DUI. I wasn't clean, I was going to the Suboxone doctor, I was on Suboxone. And then really that DUI was just like, I think it was a four-day [Methadone] binge I went on while the kids were with their dad. I don't consider being on Suboxone really clean, but I was going to the Suboxone doctor.

---

[5] Defense counsel objected to this question on relevance grounds. The court overruled the objection and allowed the line of questioning to continue.

Relative to the Children, Mother testified that she enjoyed unsupervised visitation with the Children while they were in the custody of the maternal grandparents. She stated that she never petitioned to regain custody because her mother allowed the Children to live with her for the year and half prior to her DUI arrest. She claimed that Grandmother refused to recognize her right to supervised visitation and that she had not been permitted to visit the Children since October 2014. She acknowledged that she had not paid child support, despite her consistent employment. She explained that Grandmother never asked for support and would not respond to her attempts at communication.

Grandmother testified that she and the Children reside in a four-bedroom home with Father's oldest child. She expressed a desire to adopt the Children and asserted that she was financially and physically able to care for them. She explained that she would not have pursued termination if Mother had maintained her sobriety and not endangered the Children by driving while intoxicated with them in the car. She acknowledged that she had not maintained a relationship with the Children prior to Mother's DUI arrest. She claimed that she tried to intervene but was unable to communicate with Father, who "was just too high on drugs all the time." She further stated that she was also caring for his oldest child during that time.

Grandmother testified that Addison exhibited behavioral issues and was unprepared for kindergarten when she accepted custody of the Children. She stated that Addison attends therapy and receives assistance from a tutor on a regular basis. She claimed that both children are doing well in school.

Grandmother conceded that she refused to cooperate with Mother's right to visitation. She asserted that the Children were upset by Mother's inability to maintain consistent visitation and that when visitation occurred, their behavior digressed in the days following visitation. She believed their behavior was "a lot more steady" without visitation and claimed that Addison's therapist advised against visitation.

Following the hearing, the trial court found clear and convincing evidence to support termination based upon the severe abuse of the Children as evidenced by Mother's driving while under the influence with the Children in the car. The court also found clear and convincing evidence that termination of Mother's parental rights was in the best interest of the Children. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether clear and convincing evidence supports the court's termination based upon a finding of severe child abuse pursuant to Tennessee Code Annotated section 36-1-113(g)(4).

B.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1)    [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)    [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

- 6 -

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, -- S.W.3d --, No. M2014-00453-SC-R11-PT, 2016 WL 819593, at *12 (Tenn. Jan. 29, 2016) (internal citations omitted).

## IV. DISCUSSION

### A.

The trial court may terminate parental rights based upon a finding of severe child abuse either as found "under any prior order of a court" or as "found by the court hearing the petition to terminate parental rights." Tenn. Code Ann. § 36-1-113(g)(4). "Severe child abuse" is defined as:

> (A)  (i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
>
> (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).
>
> (B)  Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;
>
> (C)  The commission of any act towards the child prohibited by §§ 39-13-502 [through] 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or
>
> (D)  Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring;

Tenn. Code Ann. § 37-1-102(b)(21). In its order, dated March 24, 2015, the trial court found that Mother committed severe child abuse as defined by Tennessee Code Annotated section 37-1-102(21)(A)(i) as evidenced by her driving under the influence with the Children in her car. Mother appealed the court's finding, and the matter was pending at the time of the trial on the termination petition.

Following the hearing on the termination petition, the court stated as follows:

Severe abuse, I mean, she severely abused [the Children] by putting them at risk for serious bodily harm or injury when she drove impaired with the [C]hildren in the car. And that's already been found by this court. Yes, it's on appeal and, yes, because the final order just got completed, it just now being considered on appeal, first by me and then by Fourth Circuit if I send it on. And the fact that that appeal could overturn that judgment could affect this order, but right now I know we have that ground.

Thereafter, the court issued a final order, entered on September 30, 2015, nunc pro tunc as of April 1, 2015, which provided in pertinent part as follows:

On June 5, 2013, the mother was arrested and charged with [DUI], Possession of a Legend Drug without prescription, and Reckless Driving (Disregard Safety of Persons or Property). On December 9, 2014, the mother pled guilty to [driving under the influence] on June 5, 2013, with the [C]hildren in the car. The remaining charges were dismissed. The mother voluntarily took methadone and benzodiazepines for which she did not have a prescription; the mother voluntarily drove with the [C]hildren in the vehicle under the influence of non-prescribed substances; the mother was under the influence while driving the vehicle; and being in an altered state exposed the [C]hildren to the risk of serious bodily injury or death.

* * *

[Mother] has committed severe abuse by operating a vehicle while she was under the influence of non-prescribed medication with the [C]hildren in the car, exposing the [C]hildren to substantial risk of bodily injury or death. Said finding, based upon the testimony presented and further clarified by the [c]ourt at a motion hearing before the [c]ourt on September 15, 2015, is made independently of the previous severe abuse finding by the [c]ourt on August 26, 2014, that was on appeal to Fourth Circuit Court.

Mother challenges the trial court's finding of severe child abuse for several reasons. First, she claims that the court erroneously relied upon the prior court order that was not final at the time of the hearing. Second, she asserts that the evidence presented is insufficient to sustain an independent finding of severe child abuse and that the transcript from the September 2015 motion hearing is not included in the record on appeal. Finally, she argues that the court failed to identify the precise definition of severe child abuse relied upon in terminating her parental rights. Grandmother responds that the record supports the court's independent finding of severe child abuse.

While the oral pronouncement following the hearing indicates the court's reliance upon the prior court order, the final order appealed from contains an independent finding of severe child abuse based upon the evidence presented at the hearing. "A Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979) (citations omitted); *see also Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) (citing *In re Adoption of E.N.R.,* 42 S.W.3d 26, 31 (Tenn. 2001) ("Trial courts, as a general matter, speak through their orders and judgments.")). We reject Mother's assertion that the court erroneously relied upon the prior court order.

Moreover, a review of the record from the termination hearing reflects that Mother admitted to driving while under the influence of prescription medication with the Children in the car. She likewise admitted that she did not have a prescription for the medication. Such behavior is sufficient to sustain a finding of severe child abuse by clear and convincing evidence without consideration of any additional argument that may have been submitted at a subsequent hearing. We agree that the court did not specifically identify Tennessee Code Annotated section 37-1-102(b)(21)(A)(i) as the ground relied upon at the hearing. However, the court indicated as such when it found that Mother "committed severe abuse by operating a vehicle while she was under the influence of non-prescribed medication with the [C]hildren in the car, *exposing* the [C]hildren to substantial risk of bodily injury or death." (Emphasis added.). Accordingly, we conclude that the record supports termination on this statutory ground.

B.

Having concluded that there was clear and convincing evidence supporting one statutory ground to terminate Mother's parental rights, we must consider whether termination was in the best interest of the Children. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i)     In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

>> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

>> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies

for such duration of time that lasting adjustment does not reasonably appear possible;[6]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the

---

[6] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

We commend Mother for her recent success in addressing her substance abuse issues by actively participating in a rehabilitation program. While she has made significant progress, she has not shown an adjustment of circumstance, conduct, or conditions that would make it safe and in the Children's best interest to return to her home in the near future when she was just recently released from the half-way house. Tenn. Code Ann. § 36-1-113(i)(1). Questions remain as to whether the environment of Mother's home would be healthy and safe as evidenced by the repetitive nature of her conduct and her failure to sustain sobriety even while in a rehabilitation program. Tenn. Code Ann. § 36-1-113(i)(7). Moreover, the Children reside in a safe and stable home. Removing them would negatively affect their emotional and psychological condition as evidenced by their regressive behavior following visitation. Tenn. Code Ann. § 36-1-113(i)(5). We acknowledge Mother's love for the Children. The fact remains that the Children need stability and have simply waited for far too long while Mother continued to engage in behavior that was detrimental to her and them. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Mother's parental rights was in the best interest of the Children. We affirm the decision of the trial court.

## V.    CONCLUSION

This judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Crystal P.

_____
JOHN W. McCLARTY, JUDGE